FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2013 OCT 21 A 10:03
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

ERIC WATKINS,

    Plaintiff,

vs.

CIVIL ACTION NO.: CV212-037

ANTHONY HAYNES, Warden;
DAVID NEWBOULD; JASON ROGERS;
JOSE FUENTES, KEITH WELLINGTON;
LANCE JAMES; RANDY MILTON;
RICKY DENT; STEEN NILE; TOMMY
CARTER, WESLEY POPWELL;
WILFREDO GODREAU; SHIRLEY
TERRADAS, Psychologist; JERRY
TINCHER Associate Warden;
VELVETE CHARLES; DONALD
HUDSON; GARY JACKSON; and
WENDY McMANUS,

    Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who was formerly incarcerated at the Federal Correctional Institution in Jesup, Georgia, filed a cause of action pursuant to 28 U.S.C. § 1331 and <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), contesting certain conditions of his confinement. Defendants filed a Motion for Summary Judgment. Plaintiff did not file a Response.[1] For the reasons which follow, Defendants' Motion should be **GRANTED**.

---

[1] Plaintiff filed Motions for Extensions of Time to file a response to Defendants' Motion for Summary Judgment. The undersigned granted the first two (2) Motions and advised Plaintiff that no further extensions would be granted. (Doc. No. 132). However, Plaintiff filed another Motion for Extension of

## STATEMENT OF THE CASE

Plaintiff contends that Defendants Haynes, Hudson, Tincher, Charles, and Terradas, all of whom were in the "chain of command" at FCI Jesup, ordered approximately twelve (12) correctional officers (Defendants Newbould, Rogers, Fuentes, Wells, James, Milton, Dent, Nile, Carter, Popwell, Godreau, and Jackson) to remove Plaintiff forcibly from his cell and place him in the Special Housing Unit with another inmate.[2] (Doc. No. 1, pp. 2–3). Plaintiff asserts that he informed these twelve (12) correctional officers he did not want to be placed in a cell with another inmate because he feared for his life. However, Plaintiff contends, these correctional officers used excessive force to remove him from his cell.

Defendants contend that they did not use an excessive amount of force against Plaintiff when he was moved from a temporary cell to a Special Housing Unit ("SHU") cell. They assert that the force used was because Plaintiff failed to follow orders.

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant[s] show[ ] that there is no genuine dispute as to any material fact and that the movant[s are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S.

---

Time, as well as a Motion to File an Out of Time Response, and the undersigned denied these Motions. (Doc. Nos. 134, 136, 141, 142).

[2] Defendant Wells is identified as "Keith Wellington" upon the docket of this case. The undersigned will refer to this Defendant as "Defendant Wells" based on his on-camera introduction.

2

242 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving parties bear the burden of establishing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant[s are] entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION AND CITATION TO AUTHORITY

Defendants allege that they did not use excessive force against Plaintiff during the calculated use of force extraction of Plaintiff from a temporary cell to an SHU cell. Defendants also allege that Defendant Terradas told Plaintiff that, if he did not agree to come out of the locked temporary cell, a team of officers would forcibly remove him. Defendants assert that Plaintiff was aware of the consequence of refusing to comply with the order, despite Plaintiff having several chances to follow the directive that he

AO 72A
(Rev. 8/82)

was going to be placed in an SHU cell. Defendants contend that there was no other choice but to implement a calculated use-of-force team to move Plaintiff from the temporary cell to his SHU cell to restore institutional order and safety. Defendants also contend that the amount of force the use-of-force team used against Plaintiff was minimal and reasonable under the circumstances. Defendants aver that any injury Plaintiff suffered as a result of the use of force was *de minimis*. Defendants assert that their actions do not constitute an Eighth Amendment violation.[3]

The Eighth Amendment's prohibition against the use of cruel and unusual punishment governs the amount of force that prison officials are entitled to use. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison officials' conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994). The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather than a good-faith effort to maintain or restore discipline. Whitley v. Albers, 475 U.S. 312, 320–21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, the following factors are relevant: the need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and

---

[3] Defendants' counsel spends a great deal of time discussing Plaintiff's alleged history of refusing orders while housed at various institutions. Even if Plaintiff consistently refused the orders of prison personnel, that is of no moment here. The issue before the Court is whether Defendants used an excessive amount of force against Plaintiff on October 29, 2009.

4

any efforts taken to temper the severity of a forceful response. Skelly v. Okaloosa Cnty. Bd. of Cnty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)). In other words, to establish a claim for excessive force, the plaintiff must show that (1) the defendant acted with a malicious and sadistic purpose to inflict harm, and (2) that more than a *de minimis* injury resulted. Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002).

A review of the DVDs which Defendants submitted reveals the following. Defendant Terradas informed Plaintiff that there was no room in the SHU for a single inmate cell and that he would have to be placed in a cell with a cellmate. Plaintiff was told that, if he did not "cuff up" for his escort to this SHU cell, officers would come into his temporary cell to handcuff Plaintiff, even if he refused the order to go to the SHU cell. Plaintiff said that he refused to go to the SHU cell with another inmate, and Defendant Terradas said, "okay." (DVD I, 0:15–0:50). Defendant Charles then addressed the camera and said that a use of force move would be made. Defendant Charles explained that Plaintiff had been placed in a temporary cell earlier that day because he had disobeyed another order while a permanent cell was being prepared. Defendant Charles also explained that Plaintiff refused to submit to having restraints placed on him for his escort to the permanent cell in the SHU. Defendant Charles further explained that Defendant Terradas' confrontation avoidance procedures were unsuccessful. (Id. at 1:02–1:50). Defendant Charles then had the camera operator (Defendant Godreau) turn the camera to the Force Cell Team members, who were divided into two (2) groups. These teams consisted of five (5) members each: Defendants Popwell, James, Milton, Dent, and Wells were on the "first" team, and

5

Defendants Nile, Carter, Rogers, Fuentes, and Newbould were on the "second" team. Each member of the team had responsibility for securing a portion of Plaintiff's body: his head; each of his upper extremities; and each of his lower extremities. Defendant McManus was also with these teams to examine Plaintiff for any possible injuries after the cell move. (Id. at 2:02). The second team was assembled just in case an emergency arose during this cell move and because another inmate was already in the cell to which Plaintiff was being moved. Plaintiff was given one more opportunity to submit to being restrained voluntarily, and he once again refused on the grounds that he feared for his life. (Id. at 6:50). The door to Plaintiff's cell was "popped", and the five (5) members of the "first" team entered the cell. Plaintiff was taken to the ground and was completely secured and on his feet in a few moments. (Id. at 6:55–9:47). Plaintiff was escorted to the other cell, and Defendant McManus checked him for injuries. Though no visible injuries were noted, Plaintiff complained that his forehead was hurting him. (Id. at 11:10–11:35). Plaintiff was then taken back upstairs, and Defendant McManus examined him again, which included a check of his restraints and several inquiries into how many fingers Defendant McManus was extending. Defendant McManus noted that Plaintiff had no open injuries. Plaintiff informed Defendant McManus that he was punched in the head four to five (4–5) times. (Id. at 13:30–14:20). Defendant Charles stated that officers would place SHU clothing on Plaintiff, as he still would not comply with the cell move. Plaintiff was moved back downstairs, and officers changed Plaintiff's clothing in a shower cell. The shower cell was illuminated by flashlights because the lights in this cell were not operational. (Id. at 15:00–35:02). Plaintiff was then taken to the permanent cell, at which time he began resisting the officers' efforts to place him

AO 72A
(Rev. 8/82)

into the cell. Plaintiff was placed in the cell, and he asked to see a doctor. (Id. at 35:02–37:40). Defendant Charles informed Plaintiff that she would take him to medical if he would uncuff. Plaintiff refused to do so. (Id. at 40:18). Plaintiff was complaining about needing medical attention because his wrists were hurting him. Defendant McManus informed Plaintiff that she could not do anything about his medical care until he agreed to have his cuffs removed. (Id. at 43:31). Plaintiff once again refused to be uncuffed, and Defendant McManus walked away from the cell door. (Id. at 45:18). Plaintiff said that someone was trying to hurt him. The video camera remained on Plaintiff (through the window of the cell) for nearly 35 minutes. (Id. at 46:43–49:35; DVD II, 0:00–30:34).[4] Defendant Charles declared that inmate Williams (Plaintiff's cell mate) was going to be removed from the cell because inmate Williams had been compliant with staff and so that Plaintiff could be assessed medically. (DVD II at 31:26). Williams and his belongings were removed from the cell without incident. Plaintiff's restraints were removed, and he was placed in ambulatory restraints. Defendant McManus checked the restraints, presumably to check whether the restraints were too tight on Plaintiff, and she also checked Plaintiff's head. Defendant McManus noted that Plaintiff had no visible injuries but was complaining about having a headache. (Id. at 37:00–43:00).

Defendants also submitted a copy of the transcript of Plaintiff's deposition. During his deposition, Plaintiff declared that Defendants Hudson and Haynes walked into a room where Plaintiff was supposed to watch an orientation video. Plaintiff had fallen asleep, and Defendant Hudson told him he needed to wake up and pay attention to the

---

[4] Defendant Charles stated that there was a short break in filming Plaintiff because the batteries in the camera needed to be replaced.

video. Plaintiff stated that he informed Defendant Hudson that he did not have to be awake and act interested in the video. Plaintiff testified that Defendant Hudson then placed him in the SHU, (doc. no. 126-4, p. 39), which is the event triggering the allegations raised in Plaintiff's Complaint. Plaintiff also testified that the use of force incident was videotaped. Plaintiff stated that officers were "beating him down" and that he was "dragg[ed] . . . down the stairs." (Id. at p. 40). Plaintiff declared that the psychologist (Defendant Terradas) did not come to his cell to speak with him as part of the confrontation avoidance procedures. (Id. at p. 49). Plaintiff testified that officers came into his cell and "attacked" him. (Id. at p. 51). Plaintiff also testified that officers starting "throwing [him] all over the place. Some of them start[ed punching] me, I remember getting fists all in my head. They beat me down to the ground when they grabbed me and start pinching (sic) me, even though I [was] already beaten to the ground." (Id.). Plaintiff stated that he resisted going into the cell with the other inmate, and the officers dragged him into the cell and "somehow" picked him up and "dumped" him on the side of his head. (Id. at p. 55). Plaintiff declared that, once he was placed in the cell with the other inmate, the officers drove his head into the ground and jerked his head back. Plaintiff also declared that the officers drove him into the ground head first and that he thought his hand was broken. (Id. at p. 54).

There are no genuine disputes as to any fact material to Plaintiff's excessive use of force claim. While the undersigned notes Plaintiff's declarations during his deposition, his declarations are, by and large, completely contradicted by the DVDs which Defendants submitted in support of their Motion. First, Defendant Terradas did speak to Plaintiff at the cell door to inform him that there was no room in the SHU for a

AO 72A
(Rev. 8/82)

single cell, and Plaintiff was told that officers would come into his cell if he refused to cuff up to go to the permanent cell. In addition, the five (5) officers who first made contact with Plaintiff in the temporary cell did not beat him or drag him down the stairs. The DVD reveals that Plaintiff was taken to the ground, but it was not because any of these officers—either individually or in conjunction with each other—beat Plaintiff or unnecessarily forced him to the ground. Rather, it appears that the officers' inertia caused Plaintiff to fall to the ground and possibly hit his forehead. However, there is no evidence that the officers punched Plaintiff in the head or anywhere else on his body once, much less four to five times as Plaintiff claims. Moreover, the DVD does not support Plaintiff's assertions that officers dumped him on the side of his head once he was placed in the cell with inmate Williams.

The credible and objective evidence of record reveals that officers used a minimal amount of force against Plaintiff after Plaintiff repeatedly refused to comply with the prison officials' directives. The officers did not apply force in a malicious or sadistic manner. Further, this evidence also reveals that Plaintiff received medical attention for his complaints about his head hurting, but Plaintiff had no visible injuries. (See also, Doc. No. 126-5, p. 12). Plaintiff's alleged injury appears to be no more than *de minimis*. Additionally, officials attempted on several occasions to have Plaintiff comply with their directives without the use of any force at all. In short, to the extent Plaintiff's deposition testimony could be construed as creating a genuine dispute when viewing this evidence in the light most favorable to Plaintiff, the Court cannot ignore evidence which contradicts this testimony in rather significant ways. Scott v. Harris, 550 U.S. 372, 380 (2007) ("[w]hen opposing parties tell two different stories, one of which is blatantly

AO 72A
(Rev. 8/82)

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").[5] As Plaintiff has not sustained his underlying Eighth Amendment claim, it is unnecessary to address Plaintiff's supervisory liability claims against Defendants Haynes, Hudson, Tincher, Charles, and Terradas. Myers v. Bowman, 713 F.3d 1319, 1328-29 (11th Cir. 2013) (stating that a supervisor cannot be held liable unless the supervised officials committed an underlying violation of a constitutional right).[6]

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion for Summary Judgment be **GRANTED**. It is also my **RECOMMENDATION** that Plaintiff's Complaint be **DISMISSED**.

**SO REPORTED** and **RECOMMENDED**, this 21st day of October, 2013.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

---

[5] Defendants submitted affidavits in support of their Motion. As the declarations set forth in these affidavits are supported by the DVDs, the undersigned will not recount the assertions made in Defendants' affidavits.

[6] Defendants did not move for summary judgment on this basis, though, in fairness, such a motion may not have been necessary. However, the undersigned directed service of Plaintiff's Complaint on Defendants Haynes, Hudson, Tincher, Charles, and Terradas based on their alleged involvement in this use of force incident. (Doc. No. 5). The evidence presented in this Motion for Summary Judgment indicates that, other than Defendant Terradas, these five (5) Defendants were in no way involved in this use of force incident. The undersigned mentions Plaintiff's "supervisory liability" claims, to the extent they might exists, out of an abundance of caution.

AO 72A
(Rev. 8/82)